May it please the court. My name is Harvey P. Sackett. I represent Susanna and Meador, plaintiff appellant in this matter. With the court's permission, I intend on reserving two minutes for rebuttal. This case involves Meador's claim for Social Security disability insurance benefits. Meador raised two main issues in her opening brief. First, she challenged the administrative law judge's stated reasons for rejecting the opinion of Dr. Mark, her treating physician. Second, Meador challenges the ALJ's stated reasons for his adverse credibility finding. Common to both issues, Meador argues that the ALJ's findings were neither supported by substantial evidence nor in accordance with Ninth Circuit case law. I'm not going to repeat the facts that are known to the court. However, I do intend to use my allotted time to further dissect the ALJ's findings. With respect to Dr. Mark's medical source statement of November 2005, the ALJ repeatedly claimed that the assessment was not consistent with various things, and he cited the following factors. Dr. Mark's progress notes, his clinical science and findings, the amount of medication prescribed to Meador, and his June 2004 residual functional capacity assessment, which he had completed at the request of the State of California on behalf of the Commissioner. In Ryan v. Astru, the Court reiterated a long progeny of Ninth Circuit case law and noted that an ALJ cannot undermine the diagnosis and an opinion of a treating physician because of so-called perceived inconsistencies. Likewise, in Ryan, the Court said that if an ALJ is going to reject a treating physician's opinion, that's seemingly contradicted by the opinion of a non-examining physician, they must provide specific and legitimate reasons for doing so. Well, counsel, let me point you to a couple of things that are of particular concern to me, and perhaps you can respond. One of the things that concerned the ALJ was that later in time Dr. Mark's opined that your client's limitations were greater, and yet the medical records at the same time indicated that, in fact, she was improving, and that those two things were pointing in opposite directions. And if that's true, isn't that a valid reason to question the statement of limitations? Judge Graber, that's blatantly untrue, and this is the reason why. In June 2004, in the form that Dr. Mark completed at the request of the State agency, he said that Meeder could lift five pounds occasionally and four pounds frequently. With regard to sitting, he said she could sit for one hour out of eight. Then we move the clock forward about a year and a half to November 2005. He said she could lift less than 10 pounds. So he gave her a greater residual functional capacity for lifting, not a lesser one, as the ALJ has stated and the Commissioner repeatedly argues. Likewise, with respect to standing, he said she could sit about five minutes at a time or less than two hours in an eight-hour day. So he increased her ability to stand. So contrary to what the ALJ stated in this conclusion, he gave her a greater residual functional capacity. And this was consistent with his progress notes, which stated that she was experiencing, albeit slow, but continuous progress. So there's no inconsistency there. Additionally, the ALJ claimed that, and he doesn't specify what he actually was looking for, that somehow Meeder should have been able to stand. But if you look at the record, from the time of her automobile accident, she was receiving Tylenol with codeine, lidoderm patches, nortriptyline, Vicodin, and clonazepam. Second thing I want to refer to insofar as the ALJ's assessment of Dr. Mark's opinion would be his comments concerning the objective signs and findings. And here again, the record doesn't support that. At various points in time, whether it was Dr. Mark's opinion or those of other physicians who examined her, there was ongoing presence of tenderness in her right shoulder, weakness in her thoracic spine, limited range of motion, various trigger points, hypersensitive muscles, spasm, limited extension of her legs, and a lack of mobility. I should mention inflection and diffused tenderness. So when we look at the reasons why the ALJ seemingly rejected Dr. Mark's opinion, number one, the progress notes were consistent. Number two, as pointed out a moment ago, his RFC, his residual functional capacity assessment in November 2005 was not lesser, but greater. And indeed, contrary to looking for more prescribed medications, Meeder would have been able to do that if he was receiving medication throughout. The second point the judge made was that he felt that Meeder was incredible. And I find this to be very problematical. Counsel, on the medication, apparently she had at one time or another taken these listed things that you're talking about, but she testified herself that she was, you know, practically taking nothing at most of the time. And the reason for that, Judge Fletcher, is as follows. She testified that when she took some of these things, she experienced significant side effects, both with respect to the Vicodin and the nortriptyline. She said they made her either drowsy or they made her feel loopy. That's her term, not mine. During the hearing, which was a very abbreviated one, the ALJ specifically stated on the record that he found her to be complete and credible. Yet in his written decision, the ALJ did a complete 360. He listed a variety of reasons why he felt that that wasn't the case. Truth be told, there were no discrepancies in her assertions as to her subjective complaints. What do we make of the finding that this examining doctor, not Dr. Marks, but he thought that she was, you know, kind of faking it, that actually her muscle tone and her muscle bulk was normal and appropriate. And yet that during the course of the examination, she seemed to be making them stop and too much pain and this and that, so that he thought that she, in fact, was not being honest about her condition. That actually happened twice, Judge Fletcher. That actually happened twice, and I want to speak to both. First, the neurologist who examined her, and as an aside, her problems are soft tissue related. So a neurological exam is trying to put a square peg in a round hole. But when the neurologist examined her, there was resistance to doing these tests. She said the tests hurt. The same thing happened when she saw Dr. Goldberg, an osteopath. He commented at length that, yes, she resisted doing those tests because she stated that they hurt. So I think it would be dangerous to jump off and say that because she resisted doing those tests, there's a lack of credibility. I'm beyond my time, but I do want to make one more point. As I noted, the ALJ said on the record that he found her credible. I wanted to take further testimony from the claimant as to her credibility and what she was doing insofar as teaching. The ALJ cut me off. He said, I've heard enough. I really don't need to hear that. All I want is another opinion from the doctor. Do you not raise in your opening brief that I can recall a due process argument that there was an improper procedure? Judge Graber, to the extent that I did not use the word due process, you're absolutely right. Well, you started by saying what I thought, how I understood your brief entirely, which is that you were challenging two things. One was the rejection of Dr. Marks' opinion, and the other was the rejection of your client's credibility. Those are the issues you raised on appeal, and that's how I've understood the case. My only point being this, that if the ALJ accepted her credibility on its face at the hearing, I'm at a loss as to why he chose a 360 later on, due process implications are otherwise aside. I would have proceeded and asked more questions if I didn't feel that I could accept this at face value. Thank you. Thank you. Good morning, Your Honors. My name is Elizabeth Feer, and I represent Michael Astrew, the Commissioner of Social Security in this case. And I would like to address a couple of things that my opponent raised. First off, the first is the issue of whether or not Dr. Marks' two opinions were inconsistent with each other. And he's absolutely correct about the sitting and walking limitations. But in June 2004, Dr. Marks expressly said the claimant didn't have any reaching or manipulative limitations. That's on page 160 in the record. And he also did not assess any he was expressly asked whether or not the claimant needed to alternate sitting and standing, and he didn't include any limitations there. Yet in November 2005, Dr. Marks issued significant limitations regarding reaching and manipulation, and he also assessed alternate sitting and standing limitations. So they are inconsistent, and the November one is actually more restrictive than the June one. So there's that. And the other thing is about the claimant's medications. As you pointed out, she did testify that she wasn't taking very many medications. She also told Dr. Goldberg that she took Vicodin very rarely, and she only took a muscle relaxer once a month. And this is a claimant who I quote, described her pain as excruciating and unbearable, that she was constantly having contractions in her head, shoulder, back, hip, and jaw that felt like crabs and lobsters were inside her body, constantly squeezing her muscles. She wrote that she had very little control of her body, little use of her right leg, and that her husband had to wheel her around their apartment. With that extreme description of pain, tiredness or loopiness when taking pain medication doesn't seem to be a valid reason to not have taken medication that would help. So with that. The claimant was able to attend school. She was taking at least one class a week as early as the fall quarter 2003. She was looking for flexible employment by August 2004. She substitute taught as early as November 2004. By January 2005 she told Dr. Goldberg she was teaching four hours a day. She earned her teaching credentials in June 2005. She testified to that. That wasn't something that suddenly happened in June 2005. And by October 2005 she was working full time with her pain well controlled. This is completely at odds with the claimant's description of her pain, and the ALJ did not err by finding that the claimant was incredible. The record also shows that there's absolutely no objective support for the claimant's limitations. Several electrodiagnostic and x-ray tests were completely negative. The only clinical findings were subjective, and as my opponent pointed out, she did consistently talk about pain, and people did find tenderness and range of motion limitations and spasm. But those are amenable to subjective manipulation. Significantly absent from the record. That one could go either way. I've read things that say it's subjective. But you're right, that one could be objective. But absent from the record is any evidence of muscle atrophy. And again, given the claimant's description of her pain, you would think, I mean, she said she had to be wheeled around her apartment. You'd think there would be some muscle atrophy. What is your response to the argument that was made both in the briefing and here today that the ALJ began by commenting that he found the claimant to be honest and articulate and a variety of other kind attributes? Does that bind the ALJ? Does that do something that is impermissible when these later findings of non-credibility are made? No, it doesn't bind him. He didn't expressly say on the record that he was going to find the claimant credible. What he said was the claimant at the hearing was credible. And at the hearing, she testified she was working full-time. I don't know how much of the record the ALJ had delved into at the time of the hearing, and that's not something that's mandated. He could have looked at her presentation at that hearing and thought, well, this woman's credible, and then gone back to the record and actually looked at the fact that there is no objective support for her complaints and that she's, you know, going to school during this time, she has full muscle strength, muscle tone, muscle bulk, and realized that, no, these aren't credible complaints. So he's not bound by what he said at the hearing. And as you pointed out, counsel didn't make a due process argument regarding his inability to further question the claimant. So credibility, the ALJ's decision, the ALJ's credibility finding was based on discrepancies between the claimant's statements and, as I read you, what she said about her pain and the treatment, the medications, her activities, which included going to school. Those are all permissible reasons to find a claimant not credible, and the ALJ's assessment of the record was certainly a reasonable interpretation, regardless of whether there is another interpretation of the record. With regard to Dr. Mark's opinion, treating physician's opinion is only entitled to controlling weight if it's not inconsistent with other substantial evidence in the record. And here we have Dr. Rana, Dr. Wong, Dr. Pirri, all assessed a full range of light for residual functional capacity. Dr. Goldberg didn't assess any limitations, and he noted the claimant didn't have any objective findings. And both Dr. Goldberg and Dr. Rana found that the claimant wasn't, Dr. Rana specifically said the claimant wasn't giving full effort, and Dr. Goldberg said she was either unable or unwilling to provide muscle strength testing. So those are, then Thomas says that a claimant's failure to fully comply with examination requirements is a reason to reject evidence. So... Counsel, there's a finding that she had a CAT scan and she had x-rays and all of them were negative. If the pain is caused by soft tissues, what would you expect those tests to show? You're correct. They probably wouldn't show significant soft tissue injuries, although she did allege nerve damage in her application process. And so, CT scans and MRIs might be helpful in that regard. But to follow up on that, the clinical findings become important when the issues are soft tissue and utterly subjective. And it's very clear from the record that this woman doesn't have any muscle atrophy. She was never noted to have any other objective findings, redness, swelling, warmth, limited reflexes, none of that is in the record. And I would also like to point out that this woman was 28 years old at the time of the ALJ's decision, and everyone agreed she was limited to some extent. She was a dancer, a dance teacher, very active, and she's limited to light work, which is, as Dr. Rana pointed out, she is limited somewhat to pain, but it's not beyond the light RFC. And the ALJ's finding that that claimant was capable of a full range of light work is fully supported by the record. Not only Dr. Rana, Drs. Wong and Dr. Pirri, and also Dr. Swan was an oral surgeon, and he emphasized that the claimant's account of her pain was very subjective and not objective. So the claimant does have the burden to prove that her allegations of disabling symptoms are supported to some extent by the medical evidence, and here all we have is Dr. Marks. The ALJ provided valid reasons for rejecting that opinion. Again, not consistent with the record as a whole, not consistent with his own treatment records, which only document the subjective things, tenderness, pain. And it's also the inconsistency between the two opinions, and that's sufficient. As the district court found, the ALJ's reasonable, regardless of whether or not there could be another reasonable interpretation of the record. There was a term here that I hadn't confronted before about give-away weakness. Now, tell me exactly what is a give-away weakness? Give-away weakness, Your Honor, is one of the five waddle signs, and I'm sorry I can't tell you what all the other ones are at this point, but essentially what it is is on muscle strength testing, suddenly the muscle gives way. And it is a symptom of malingering. It's not in and of itself enough to prove malingering, but it is evidence of that. So, unless you have any more questions, we leave it at district court. I don't believe that we do. Thank you. Mr. Sackett, you have 15 seconds or a minute or something, enough time to make a few comments. Thank you, Judge Graber. I will make it very quick. There's no question that this is not a case where there's overwhelming objective evidence. The fact of the matter is, though, that there is some objective evidence to corroborate her subjective complaints. Dr. Swan said as much. Opposing counsel doesn't quote him entirely. He specifically stated that the pain in her TMJ joints, her face and head, were consistent with the objective findings of point pain and in her muscles. Thank you, Your Honors. Thank you, counsel. We appreciate the arguments, and the case is submitted.
judges: Fletcher B. , Canby, Graber